UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| JASON JARVIS | ADAM LEVIN |
| | TAYLOR BALL |

| Proceedings: | **PLAINTIFF AND COUNTERDEFENDANT JUDI FIELD'S MOTION FOR SUMMARY ADJUDICATION** (filed 5/1/2012) |
|---|---|
| | **DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** (filed 5/1/2012) |
| | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** (filed 5/1/2012) |
| | **DEFENDANTS' MOTION REGARDING OBJECTIONS TO MAGISTRATE WALSH'S NOVEMBER 8, 2011 DISCOVERY ORDER** (filed 5/1/2012) |

## I.   INTRODUCTION

On August 3, 2010, plaintiff Judi Fields filed an action against QSP, Inc., a/k/a TI Media Solutions ("QSP"); Time, Inc. ("Time"); and Does 1–50 (collectively, "defendants").[1]  See Case No. CV 10-5772 CAS (PJWx).  On September 8, 2010, plaintiff filed a first amended complaint ("FAC") against the same defendants.  On December 17, 2010, QSP answered the FAC and filed first amended counterclaims ("FACC") against Fields for: (1) breach of fiduciary duty and duty of loyalty; (2) breach of contract; (3) grossly and culpably negligent performance of duties; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of Cal. Lab. Code §§ 2854, 2856, 2858, 2859, 2860, 2863 and 2865; (6) misappropriation of trade secrets under the

---

[1]QSP is a wholly owned subsidiary of Time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|----------|----------------------|------|--------------|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 et seq. ("UTSA"); and (7) violation of Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL").

On April 8, 2011, the Court granted in part and denied in part Fields' motion to dismiss the FACC. Specifically, the Court granted Fields' motion as to defendants' first counterclaim insofar as it alleges a breach of fiduciary duty, but denied the motion insofar as it alleges a breach of the duty of loyalty. The Court denied the remainder of Fields' motion. On April 25, 2011, pursuant to stipulation of the parties, Fields filed a Second Amended Complaint ("SAC") against the same defendants, alleging claims for: (1) failure to pay overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207(a), 216(b) ("FLSA"); (2) failure to pay overtime wages pursuant to Cal. Lab. Code §§ 510, 1194; (3) failure to pay vested vacation time pursuant to Cal. Lab. Code § 227.3; (4) waiting time penalties pursuant to Cal. Lab. Code §§ 201, 202, and 203; (5) failure to provide accurate itemized statements pursuant to Cal. Lab. Code § 226; (6) unfair competition and unfair business practices pursuant to Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); and (7) civil penalties under Private Attorney General's Act, Cal. Lab. Code §§ 2968 et seq. ("PAGA"). Defendants filed second amended counterclaims ("SACC") on November 21, 2011, alleging the same seven counterclaims as in the FACC.

The parties filed four motions on November 18, 2011: defendants filed a motion for judgment on the pleadings as to plaintiff's PAGA claim; a motion regarding objections to Magistrate Judge Walsh's November 8, 2011, discovery order; and a motion for partial summary judgment. Plaintiff filed a separate motion for partial summary judgment. The parties filed their respective oppositions on November 28, 2011, and their replies on December 5, 2011.

By order dated December 19, 2011, the Court granted in part defendants' motion for summary judgment. The Court concluded that defendants did not owe Fields any overtime pay pursuant to the FLSA because she qualified as an exempt employee. The Court declined supplemental jurisdiction over the remaining state law claims and counterclaims and dismissed the action.

On January 23, 2012, Fields filed the instant action in Los Angeles County Superior Court. Defendants timely removed to this Court on February 6, 2012, on the basis of diversity jurisdiction. See Case No. CV 12-1238 CAS (PJWx). The action is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

identical to Case No. CV 10-5772, except that plaintiff no longer asserts a claim under the FLSA. On May 1, 2012, the Court permitted the parties to refile their motions regarding issues on which the Court declined to exercise supplemental jurisdiction. The Court held a hearing on the refiled motions on June 4, 2012. After considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II.    BACKGROUND

Many of the facts are known to the parties and outlined in the Court's prior order. See Case No. CV 10-5772 CAS (PJWx), Dkt. No. 152.

QSP develops and administers fundraising programs for schools and youth organizations across the country. Plaintiff worked for QSP from 1999 until February 19, 2010, but chiefly worked as a "Sales and Service Specialist." In that capacity, plaintiff was responsible for contacting potential clients, gathering data, and helping the field sales managers ("FSMs") sell QSP's products. Plaintiff was also responsible for compiling a database of existing and potential school customers ("QSP Database"). Defendants' Statement of Undisputed Facts ("DSUF") ¶ 40. The FSMs selected which schools to include in the database based on whether the FSM concluded that a particular school was a viable prospect. Id. ¶ 41. Each school's entry in the QSP Database includes contact information, any competitors of QSP with whom the school had previously done business, information related to the school's prior fundraising efforts, a record of QSP's efforts to obtain the school's business, whether a school was no longer a viable prospect, and which schools were deemed priority prospects. Id. ¶¶ 42, 43. Defendants allege that plaintiff did not delete the QSP Database from her home computer after she voluntarily resigned from QSP in 2010. Id. ¶ 55. Instead, defendants aver that plaintiff used the QSP Database to provide services for QSP's direct competitors in violation of a confidentiality agreement plaintiff signed and in violation of trade secret laws. Id. ¶ 58.

According to plaintiff, defendants utilized three "illegal" policies with regard to their employees. First, from January 1, 1991, until November 2009, defendants allegedly implemented a vacation policy requiring employees to forfeit any and all vested vacation time they did not use during the calendar year. Plaintiff's Statement of Undisputed Facts ("PSUF") ¶ 7. Second, defendants allegedly implemented and enforced a "180-day" policy by which the FSMs are required to forfeit earned commissions if accounts are not paid by the schools or organizations within 180 days of invoicing. Id. ¶ 8. Third,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

plaintiff asserts that her employment contract contains an illegal covenant not to compete because it includes language that plaintiff will not, among other things, "(a) [c]ontact, directly or indirectly, any fund-raising organization that I solicited or serviced during my employment by QSP (or its predecessor) for fund-raising purposes for my benefit or for the benefit of any party other than QSP." Id. ¶ 19. Defendants' allegedly illegal policies form the basis of many of plaintiff's claims.

## III.  LEGAL STANDARD

### A.  Motion for Judgment on the Pleadings

A motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c) provides a means of disposing of cases when all material allegations of fact are admitted in the pleadings and only questions of law remain. See McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996). In considering a Rule 12(c) motion, the district court must view the facts presented in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party. NL Indus. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); In re Century 21-Re/Max Real Estate Adver. Claims Litig., 882 F. Supp. 915, 921 (C.D. Cal. 1994). For purposes of the motion, the moving party concedes the accuracy of the factual allegations of the complaint, but does not admit other assertions that constitute conclusions of law or matters that would not be admissible in evidence at trial. 5C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2004).

### B.  Motion for Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.    DISCUSSION

### A.    Defendants' Motion for Judgment on the Pleadings as to Plaintiff's PAGA Claim

Defendants move for judgment on the pleadings as to plaintiff's seventh claim for civil penalties under PAGA. Defendants argue that a plaintiff pursuing a representative PAGA claim must comply with Fed. R. Civ. P. 23, which plaintiff has not done in this case. Mot. at 3–8. Plaintiff, by contrast, asserts that a litigant need not comply with Rule 23 when bringing a PAGA claim because PAGA is a law enforcement mechanism and not a class action statute. Opp'n at 3–4.

Under PAGA, an "aggrieved employee" may bring a civil action against an employer "on behalf of himself or herself and other current or former employees." Cal. Lab. Code § 2699(a). If the employee's claim is successful, 75 percent of the penalties recovered go to the Labor and Workforce Development Agency ("LWDA"), and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

remaining 25 percent go to the aggrieved employees.  Cal. Lab. Code § 2699(I).  The California Supreme Court described the purpose of PAGA as follows:

> The Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts.

Arias v. Sup. Ct., 46 Cal. 4th 969, 980 (2009).

With the legislature's purpose in mind, the Arias court held that an "aggrieved employee" suing in a representative capacity under PAGA need not meet California class action requirements. Id. at 975.

The same day it handed down Arias, the California Supreme Court also decided Amalgamated Transit Union, Local 1756, AFL-CIO v. Sup. Ct., 46 Cal. 4th 993 (2009). The court found that PAGA

> does not create property rights or any other substantive rights.  Nor does it impose any legal obligations.  **It is simply a procedural statute** allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies. As we have held in the past, the right to recover a statutory penalty may not be assigned.

Id. at 1003 (emphasis added).

Following Arias and Amalgamated, federal courts have struggled with whether a plaintiff bringing a PAGA claim in federal court must comply with Rule 23's class action requirements.  In 2010, the United States Supreme Court addressed the interplay between Rule 23 and a New York state statute purporting to limit the availability of class action relief.  See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., --- U.S. ---, 130 S. Ct. 1431 (2010) (plurality op.).  In Shady Grove, the plaintiffs filed a diversity-based class action in federal court that was barred under a New York statute but permitted under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

Rule 23.  The Supreme Court concluded that "the validity of a Federal Rule depends entirely upon whether it regulates procedure," and if it does, "it is authorized by [28 U.S.C.] § 2072 and is valid in all jurisdictions, with respect to all claims, regardless of its incidental effect upon state-created rights."  Id. at 1444.  Thus,  "when a situation is covered by a federal rule . . . the Rules Enabling Act . . . controls," and because Rule 23 was promulgated under the Rules Enabling Act, it preempted the contrary New York statute.  Id. at 1448–49 (Stevens, J., concurring).  The Court noted that "like the rest of the Federal Rules of Civil Procedure, Rule 23 *automatically* applies 'in all civil actions and proceedings in the United States District Courts.'"  Id. at 1438 (emphasis in original) (quoting Fed. R. Civ. P. 1).  See also Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 947 (9th Cir. 2011) (holding that Rule 23 "governs the class-certification issue even if the underlying claim arises under state law"); Hartless v. Clorox Co., 273 F.R.D. 630, 636 (S.D. Cal. 2011) ("A class action in federal court on diversity grounds must comply with [Rule 23].").

Here, PAGA specifically permits recovery for unnamed nonparties.  Cal. Lab. Code §§ 2699(i), (j).  As such, it is a procedural mechanism by which litigants may recover for absent plaintiffs, akin to a class action.  Because PAGA "is simply a procedural statute," see Amalgamated, 46 Cal. 4th at 1003, and because "Rule 23 *automatically* applies" in all civil actions in federal court, see Shady Grove, 130 S. Ct. at 1438, plaintiff must meet the requirements of Rule 23 to proceed with her PAGA claim.[2]

---

[2]The Court recognizes that there are differences between a PAGA action and a traditional Rule 23 class action.  For example, in a class action, an individual not named as a party to the litigation is bound by a judgment on the merits by res judicata and collateral estoppel regardless of the outcome, assuming the Rule 23 requirements have been met.  See Taylor v. Sturgell, 553 U.S. 880, 884 (2008).  By contrast, a judgment in a PAGA action operates as "one-way" collateral estoppel that permits absent employees to use a favorable judgment against employers to recover PAGA penalties, but precludes an employer from using a judgment in its favor to prevent future suits by absent nonparty employees.  See Arias, 46 Cal. 4th at 987 ("Because an action under the act is designed to protect the public, and the potential impact on remedies other than civil penalties is ancillary to the action's primary objective, the one-way operation of collateral estoppel in this limited situation does not violate the employer's right to due process of law.").  The Court does not dispute that a plaintiff might have different interests in bringing PAGA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

See Williams v. Lockheed Martin Corp., 2011 WL 4634269, at *2 (S.D. Cal. Oct. 5, 2011) (denying discovery requests under PAGA because the plaintiff had not complied with Rule 23; Ivey v. Apogen Techs., Inc., 2011 WL 3515936, at *3 (S.D. Cal. Aug. 8, 2011) (concluding that PAGA "contravenes federal procedural requirements" and thus a PAGA litigant in federal court must comply with Rule 23; Thompson v. APM Terminals Pac. Ltd., 2010 WL 6309364, at *2 (N.D. Cal. Aug. 26, 2010) (citing Shady Grove and concluding that "[t]o the extent Plaintiff here seeks to bring a representative PAGA action on behalf of other non-party, unnamed aggrieved employees in federal court, such a claim must meet the requirements of Rule 23"); and Adams v. Luxottica U.S. Holdings Corp., 2009 WL 7401970, at *2 (C.D. Cal. Jul. 24, 2009) ("Having failed to comply with the certification requirements of Rule 23, plaintiffs lack standing to represent the rights and interests of third parties. Although PAGA authorizes representative actions, California state law cannot alter federal procedural and jurisdictional requirements."). The fact that a plaintiff may bring a PAGA claim in California state court without adhering to California's class action requirements is of no moment, because "a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court" if the plaintiff cannot demonstrate the requisite federal procedural and jurisdictional requirements. Lee v. Am. Nat. Ins. Co., 260 F.3d 997, 1001–02 (9th Cir. 2001).

Accordingly, because plaintiff has not and admittedly cannot meet the requirements of Rule 23, defendants' motion for judgment on the pleadings is GRANTED as to plaintiff's seventh claim for relief.[3]

--------

claims compared with class action claims, which weighs against finding that Rule 23 should apply to PAGA claims in federal court. On the other hand, a defendant would have interest in the resolution of a PAGA claim binding absent nonparty employees so it is not subject to multiple suits, which weighs in favor of finding that Rule 23 should apply to PAGA claims in federal court. Regardless of these policy considerations, the plain language of Amalgamated and Shady Grove inform the result reached herein.

[3]Courts that have reached the opposite conclusion chiefly rely on the purposes behind PAGA as a law enforcement mechanism. See McKenzie v. Fed. Express Corp., 765 F. Supp. 2d 1222, 1234 (C.D. Cal. 2011) (PAGA claims are law enforcement actions and not class actions); Cardenas v. McLane Foodservice, Inc., 2011 WL 379413, at *3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

**B.    Defendants' Motion Regarding Objections to Magistrate Judge Walsh's November 8, 2011 Discovery Order**

On November 8, 2011, Magistrate Judge Walsh issued an order concluding that plaintiff is entitled to discovery on her PAGA claim with respect to defendants' so-called "180-day" commission policy.  _See_ Case No. CV 10-5772 CAS (PJWx), Dkt. No. 82 (concluding that "[t]his is a discovery motion" and "is not the proper context to decide" whether Rule 23 applies to the PAGA claim, and that "[a]bsent any indication from the district judge that [p]laintiff's claim is wanting, she is entitled to discovery").  Defendants seek to vacate Magistrate Walsh's order on the ground that plaintiff cannot pursue her PAGA claim as a matter of law.  Mot. at 9.

Fed. R. Civ. P. 72(a) provides that the Court "must consider timely objections [to a magistrate's nondispositive order] and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  A magistrate's legal conclusions are reviewed _de novo_.  Columbia Pictures, Inc. v. Bunnell, 245 F.R.D. 443, 446 (C.D. Cal. 2007).

---

(C.D. Cal. Jan. 31, 2011) (PAGA actions are parallel to law enforcement actions brought by the LWDA, and thus the "prudential limitations against third party standing does not apply to a representative action under PAGA"); Mendez v. Tween Brands, Inc., 2010 WL 2650571, at *4 (E.D. Cal. Jul. 1, 2010) (holding that a representative action under PAGA is permissible because "the remedy sought in a PAGA suit consists of civil penalties, not individual or class damages"); Sample v. Big Lots Stores, Inc., 2010 WL 4939992, at *3 (N.D. Cal. Nov. 30, 2010) (no need to comply with Rule 23 because purpose of PAGA is not to confer a private benefit upon plaintiffs, but to vindicate the public through imposition of civil penalties on employers who violate the California Labor Code); Ochoa-Hernandez v. Cjaders Foods, Inc., 2010 WL 1340777, at *4 (N.D. Cal. Apr. 2, 2010) ("Unlike class actions, these civil penalties [under PAGA] are not meant to compensate unnamed employees because the action is fundamentally a law enforcement action."); and Moua v. Int'l Bus. Mach. Corp., 2012 WL 370570, *3 (N.D. Cal. Jan. 31, 2012) ("PAGA transcends the definition of what is simply procedural.  The statute's plain purpose is to protect the public interest through a unique private enforcement process, not to allow a collection of individual plaintiffs to sue the same defendant in one consolidated action for the sake of convenience and efficiency.").  However, the Court declines to follow the reasoning behind these cases for the reasons stated above.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

Here, for the reasons set forth <u>supra</u>, the Court finds that plaintiff may not pursue a PAGA claim without complying with Rule 23.  Because a party is not entitled to discovery unless it is "relevant to any party's claim or defense," <u>see</u> Fed. R. Civ. P. 26(b)(1), Magistrate Walsh's order concluding that plaintiff is entitled to discovery on her PAGA claim is "contrary to law."  Fed. R. Civ. P. 72(a).

Accordingly, Magistrate Judge Walsh's November 8, 2011 order permitting plaintiff to obtain discovery with regard to her PAGA claim is VACATED.

### C.    Plaintiff's Motion for Partial Summary Adjudication

Plaintiff seeks summary adjudication on three issues: (1) that defendants' vacation policy is illegal per se because it violates Cal. Lab. Code § 227.3; (2) that defendants' 180-day commission-loss policy is illegal per se because it violates Cal. Lab. Code § 221; and (3) that the noncompetition agreement plaintiff entered into is void as a matter of law.  Mot. at 1.  Each issue is discussed in turn.

### 1.    Defendants' Vacation Policy

Plaintiff asserts that defendants maintained the following vacation policy from January 1, 1991 until November 2009: "Vacations cannot be saved by employees from one year to the next; they must be taken within the calendar year earned.  Nor can QSP defer an employee's vacation into the next year."  Fields Decl., Exh. B.  Plaintiff argues that this "use-it-or-lose-it" policy is illegal under California law because Cal. Lab. Code § 227.3 prohibits an employer from requiring an employee to forfeit unused vacation time upon an employee's separation from the company.  Mot. at 7.  Moreover, plaintiff contends that employees who sue for vested unpaid vacation time are not limited under California law from recovering sums accrued more than four years prior.  <u>Id.</u> (citing <u>Sequeira v. Rincon-Vitova Insectaries, Inc.</u>, 32 Cal. App. 4th 632 (Cal. Ct. App. 1995)).  Further, plaintiff asserts that defendants "had no method or documentation to determine the number of vested vacation days used by a California employee," meaning plaintiff is entitled to "<u>all</u> vested unused vacation time during her employment, not just during the last four years."  <u>Id.</u> at 8 (emphasis in original).

Defendants, in opposition, argue that a violation of Cal. Lab. Code § 227.3 occurs only if and when a vested and unused vacation day is actually forfeited.  Opp'n at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|----------|------------------------|------|--------------|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

Here, according to defendants, plaintiff has submitted no evidence that she "actually forfeited" any vested and unused vacation time.  Id.  Defendants argue that plaintiff's failure to offer evidence regarding the number of vacation days she accrued but did not use "calls into question whether she even has standing to pursue her claim."  Id. at 3–4 n.1.  Further, defendants contend that plaintiff's assertion relies entirely on defendants' written policy, which says "nothing about forfeiture of accrued vacation."  Id. at 4 (emphasis omitted).  Thus, defendants maintain that "[i]t is just as plausible under the written policy that the employee would receive a warning without further consequence, as it is that the employee would be penalized in some way."  Id. (citing Boothby v. Atlas Mech., Inc., 6 Cal. App. 4th 1595, 1598 (Cal. Ct. App. 1992)).  Defendants also argue that the doctrine of laches limits plaintiff's recovery of payment for vested and unused vacation time because plaintiff has no memory or documentation of the amount of overtime she worked.  Id. at 6 (citing Sequeira, 32 Cal. App. 4th at 637).

Plaintiff provides one conclusory statement that she was not paid all of her vested and unused vacation time.  See Fields Decl. ¶ 6.  However, plaintiff has not provided any evidence that defendants implemented the policy in an unlawful manner or that the policy even applied to her.  At oral argument, defendants stated that they agree with plaintiff that triable issues exist as to whether plaintiff was denied payment under the policy.  Accordingly, there is a question of fact as to whether defendants utilized the policy in an unlawful fashion, and if so, what damages, if any, plaintiff may be entitled to receive.  Plaintiff's motion for summary judgment is DENIED as to defendants' vacation policy.

## 2.      Defendants' 180-day Commission Policy

Pursuant to her PAGA claim, plaintiff seeks an order declaring defendants' 180-day commission policy unlawful.  As discussed supra, however, plaintiff may not proceed on her PAGA claim without complying with Rule 23, which she has not done.  Accordingly, plaintiff lacks standing "to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  Plaintiff's motion is therefore DENIED insofar as she seeks a declaration regarding defendants' 180-day commission policy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

### 3. Defendants' Alleged Noncompetition Agreement

On September 5, 1999, plaintiff signed an employment agreement that states the following:

> I recognize and acknowledge that the goodwill and patronage of the accounts of QSP . . . with fund-raising organizations are solely the property of QSP and that information concerning the identity and size of and contacts at such accounts and the identity of other employees of QSP (hereinafter called the "Information") and concerning the business practices and Know-how of QSP (the "Know-how") are the confidential business information of QSP.  The Information and Know-how are generally not known or readily accessible to the public.

> 1.   During the period of my employment and for twelve (12) months following my separation for any reason from QSP, I will not:

> > (a)   contact, directly or indirectly, any fund-raising organization that I solicited or serviced during my employment by QSP (or its predecessor) for fund-raising purposes for my own benefit or for the benefit of any party other than QSP; or

> > (b)   solicit, directly or indirectly, any fund-raising organization that I solicited or serviced during my employment by QSP (or its predecessor) for fund-raising purposes for my own benefit or for the benefit of any party other than QSP; or

> > (c)   contact, directly or indirectly, any fund-raising organization in my Territory . . . for fund-raising purposes for my own benefit or for the benefit of any party other than QSP; or

> > (d)   solicit, directly or indirectly, any fund-raising organizations in my Territory for fund-raising purposes for my own benefit or for the benefit of any party other than QSP; or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|----------|----------------------|------|--------------|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

     (e)    commit any act which may lead to deprive QSP of its goodwill or disparage QSP's relationships with the fund-raising organizations in the Territory; or

2.    At all times while employed by QSP, I agree that I shall not provide any services for any fund-raising business other than QSP nor shall I promote any fund-raising products except through QSP.

3.    At all times, I will continue to receive all Information and Know-how in strict confidence and take all necessary steps to maintain the confidentiality of the Information and Know-how.  Accordingly, I will not:

     (a)    disclose any Information or Know-how to any business which is in competition with QSP; and

     (b)    for a period of twelve (12) months following my separation for any reason from QSP, solicit (directly or indirectly), interfere with or attempt to interfere with any officers, employees, representatives or agents of QSP or induce or attempt to induce any of them to leave the employ or service of QSP with the purpose of utilizing that individual to contact or solicit fund-raising organizations.

4.    Upon my separation from QSP for any reason, I agree that I will, not later than seven (7) days, after such termination, return to QSP:

     (a)    all records (including all copies) concerning QSP in my Territory;

     (b)    all records prepared or received by me or in my possession concerning the business activities conducted by me on behalf of QSP;

     (c)    all Information and Know-how; and

     (d)    all QSP pamphlets, manuals (training, personnel, employment or otherwise) and other literature, created, produced or distributed by QSP.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|----------|------------------------|------|--------------|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

5.    I agree in light of the special nature of QSP's fund-raising business that if I violate this Agreement, appropriate relief by a court requires that the terms of paragraphs 1 (a–e) and 3 (b) will be extended for a period of twelve (12) months commencing on the date of my last violation of this Agreement, that I will be responsible for all attorneys' fees, costs and expenses incurred by QSP by reason of any action relating to this Agreement, and that QSP will be entitled to such additional relief that a court deems appropriate.

6.    This Agreement may not be altered or waived except in writing, signed by QSP and me.

7.    I have signed this Agreement knowingly and voluntarily and had ample opportunity to consult with my own attorney.

Declaration of Taylor S. Ball ("Ball Decl.") Exh. A-7.

Plaintiff argues that the entire contract is unlawful and unenforceable on the ground that it is "permeated with illegality" because it contains a covenant not to compete in alleged violation of Cal. Bus. & Prof. Code § 16600. Mot. at 12. According to plaintiff, the "essential purpose" of the agreement is to restrict competition and solicitation of QSP's customers, and that the provisions "related to confidentiality appear intended to support that purpose and clearly relate to it." Id. at 13. Thus, plaintiff argues that the entire agreement is void and unenforceable. Id. at 14–15.

In opposition, defendants contend that the restrictive covenants at issue do not preclude plaintiff from working for QSP's competitors; rather, the covenants apply "narrowly" to prohibit plaintiff from soliciting QSP's actual and potential customers by using QSP's confidential information. Id. at 22. Indeed, defendants assert that plaintiff "has freely competed with QSP" since leaving the company. Id. at 23. Further, defendants contend that the agreement merely seeks to protect QSP's trade secrets. Id. Alternatively, defendants assert that any provisions that violate § 16600 can "readily be severed" from the agreement and the remaining lawful provisions enforced. Id. at 23–24.

"Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. "Under the statute's plain meaning, therefore, an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                     O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|----------|----------------------|------|--------------|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

employer cannot by contract restrain a former employee from engaging in his or her profession, trade, or business . . . ."  Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 946–97 (2008).  Under California law, "a court has discretion to either sever an unconscionable provision from an agreement, or refuse to enforce the agreement in its entirety."  Pokorny v. Quixtar, Inc., 601 F.3d 987, 1005 (9th Cir. 2010).

Here, paragraphs 1(a)–(e) and 3(b) of the employment agreement seek to prohibit plaintiff from contacting or soliciting any fundraising organizations within a proscribed geographical territory or any QSP employees for one year.  Such restrictions are per se unlawful under California law regardless of the reasonableness of the covenant, because "an employer cannot by contract restrain a former employee from engaging in his or her profession," as paragraphs 1(a)–(e) and 3(b) of the agreement attempt to do here. Edwards, 44 Cal. 4th at 946–47.  The Court concludes that those provisions are therefore unlawful and unenforceable.

However, § 16600 does not invalidate an agreement between an employer and employee that seeks to maintain the confidentiality of an employer's trade secret or other proprietary information.  See, e.g., Bank of Am., N.A. v. Lee, 2008 U.S. Dist. Lexis 110410, at *17 (C.D. Cal., Sept. 22, 2008) (concluding that the "'trade secret exception' to § 16600 still applies.  Nothing in Edwards is to the contrary"); Latona v. Aetna U.S. Healthcare Inc., 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999) ("Employment restrictions that serve to protect a former employer's trade secrets, proprietary information, and confidential information are valid in California."); Matull & Assocs., Inc. v. Cloutier, 194 Cal. App. 3d 1049, 1054 (Cal. Ct. App. 1987) ("Case law provides that the terms of [§ 16600] do not invalidate an 'employee's agreement not to disclose his former employer's confidential customer lists or other trade secrets or not to solicit those customers.'") (quoting Loral Corp. v. Moyes, 174 Cal. App. 3d 268, 276 (Cal. Ct. App. 1985)).  Accordingly, the remainder of the employment agreement is enforceable so long as it can be severed from the offending provisions.

The Court concludes that, contrary to plaintiff's assertion, the employment contract is not "permeated with illegality," nor will the Court be required to "rewrite" its terms. Rather, the offending provisions are contained in separate subsections within the contract. The fact that paragraph 5 applies the 12 month restriction only to paragraphs 1(a)–(e) and 3(b) is further evidence that those subsections are not "inextricably intertwined" with the remainder of the contract.  The Court therefore "has the power to sever the offending

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|----------|------------------------|------|--------------|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

non-compete provision and enforce the remainder of the contract." <u>Allied N. Am. Ins.
Brokerage Corp. v. Woodruff-Sawyer</u>, 2005 U.S. Dist. Lexis 47388, at *23 (N.D. Cal.,
Feb. 22, 2005); <u>id.</u> at *23 (concluding that in such situations, the court is not "rewrit[ing]
the non-compete provision, but [enforcing] a separate provision of the contract"). <u>See
also</u> <u>Winston Research Corp. v. Minnesota Mining and Mfg. Co.</u>, 350 F.2d 134, 140 (9th
Cir. 1965) (holding that the "to that extent void" language contained in § 16600 indicated
the legislature's intent to permit severance); <u>Mercuro v. Sup. Ct.</u>, 96 Cal. App. 4th 167,
184–85 (Cal. Ct. App. 2002) ("If . . . the offending provisions can be excised from the
contract by means of severance or limitation, then the remainder of the contract can be
enforced.").

Accordingly, plaintiff's motion is GRANTED in part and DENIED in part.  It is
granted insofar as paragraphs 1(a)–(e) and 3(b) are unenforceable.  It is denied as to the
remainder of the contract, which the Court finds is enforceable.

> **D.  QSP's Motion for Summary Judgment as to Plaintiff's Claim for
> Failure to Pay Overtime Wages Pursuant to Cal. Lab. Code §§ 510,
> 1194 and as to its Counterclaims**

The Court previously concluded that plaintiff is not entitled to overtime payments
because she meets the definition of an "exempt employee" pursuant to the FLSA.  <u>See</u>
Case No. CV 10-5772 CAS (PJWx), Dkt. No. 152.  Because the Court declined to
exercise supplemental jurisdiction over the remaining claims, it did not reach plaintiff's
claim that she is entitled to overtime payments pursuant to Cal. Lab. Code §§ 510, 1194.
<u>Id.</u> at 11 n.9.

The standard for whether an employee is considered an exempt administrative
employee under California law "closely parallels" its FLSA counterpart.  <u>See</u> <u>Combs v.
Skyriver Commc'ns, Inc.</u>, 159 Cal. App. 4th 1242, 1255 (Cal. Ct. App. 2008).  There are
three slight differences: first, under the California standard, the employee must earn a
monthly salary equivalent to at least two times the applicable minimum wage, as opposed
to $455 per week under the FLSA.  8 Cal. Code Reg. § 11040(1)(A)(2)(g).  Second, in
contrast to the FLSA's "primary duty" requirement, the California standard requires that
the employee be "primarily engaged" in exempt work.  8 Cal. Code. Reg.
§ 11040(1)(A)(2)(f).  "The 'primarily engaged' element has been construed to require
that the employee spend at least fifty percent of his or her time on work that meets the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

test of the exemption." <u>Ho v. Ernst & Young LLP</u>, 2009 WL 111729, at \*5 (N.D. Cal. Jan. 15, 2009). Finally, under California law, the employee must (i) regularly and directly assist a proprietor or bonafide executive or administrative employee; or (ii) perform "under only general supervision work along specialized or technical lines requiring special training, experience or knowledge"; or (iii) execute "under only general supervision special assignments and tasks." 8 Cal. Code Regs. § 11040(1)(A)(2)(c)–(e).

For the reasons set forth in its December 19, 2011 order, the Court concludes that plaintiff was "primarily engaged" in exempt work and performed "under only general supervision work along specialized or technical lines requiring special training, experience or knowledge." 8 Cal. Code Regs. § 11040(1)(A)(2)(d), (f); Case No. CV 10-5772 CAS (PJWx), Dkt. No. 152 at 7–10 (concluding that plaintiff's "primary dut[ies]" were administrative and that plaintiff exercised "abundant discretion" in executing those duties). The only remaining issue is whether plaintiff's compensation meets the California standards.

The Court concludes that it does. The parties agree that since 2008, defendants were required to pay plaintiff no less than $33,280 per year to meet the California standard. <u>See</u> Mot. at 12; Opp'n at 16. Plaintiff testified that her base salary was $31,800. Ball Decl., Exh. A at 477:10–17. Plaintiff also testified that she received a guaranteed monthly payment in addition to her base salary based on the number of FSMs who elected to use her services on an annual basis. <u>Id.</u> at 478:4–6 (testifying that she was eligible for upwards of $30,000 per year in compensation on top of her base salary based on retainers paid by the FSMs at the rate of $250 per month per rep). In order to have earned less than the required amount, plaintiff's commissions would have had to have totaled less than $1,480 per year. Plaintiff does not assert that she ever made less than $1,480 per year in commissions. <u>See</u> Declaration of Micah Dowling, QSP's Vice President of Human Resources, ¶¶ 3–13 (stating that, based on a review of plaintiff's payroll records, her guaranteed commission never dipped below $1,750 per month, or $21,000 per year). Accordingly, for the reasons set forth herein and in Case No. CV 10-5772 CAS (PJWx), Dkt. No. 152, defendants' motion for summary judgment is GRANTED as to plaintiff's second claim for failure to pay overtime pursuant to Cal. Lab. Code §§ 510, 1194 on the ground that plaintiff is an exempt administrative employee.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

The Court now turns to defendants' motion as to QSP's counterclaims. QSP's three counterclaims, for (1) breach of contract and the implied covenant of good faith and fair dealing, (2) misappropriation of trade secrets, and (3) violation of the UCL, each involve allegations that plaintiff maintained and misappropriated a copy of the QSP Database after leaving her employment with QSP. Each counterclaim is discussed in turn.

### 1.     Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

According to QSP, the confidentiality agreement signed by plaintiff requires her to keep certain of QSP's information confidential and return it upon her separation from QSP. QSP alleges that plaintiff breached the agreement and the covenant of good faith and fair dealing by maintaining a copy of the QSP Database for herself and using the information contained therein to assist QSP's competitors. Mot. at 18–20.

Plaintiff contends that defendants "do not articulate how as a matter of law Fields can be considered to have violated any confidentiality provision when they were aware of the database and its use on behalf of various FSMs and that it was shared with schools not subject to any confidentiality provisions."[4] Opp'n at 23–24. Moreover, plaintiff contends that QSP's request that she return a copy of the QSP Database does not mean that she knew she could not keep using the database with FSMs. Id. at 24.

As an initial matter, compiling the QSP Database—which included, among other things, detailed contact information for various clients—was part of plaintiff's responsibilities while employed by QSP. See Ball Decl., Exh. A at 80:23–25. As such, it fell within the defined materials plaintiff promised to return to QSP within seven days of her separation from the company. See Ball Decl., Exh. A-7 ¶ 4(a)–(c) (stating that plaintiff must return "all records" concerning QSP in her territory, "all records" prepared by plaintiff concerning the business activities conducted by her on behalf of QSP, and "all Information and Know-how"). Plaintiff also promised not to disclose "any

---

[4]Plaintiff also argues that the contract at issue is "illegal as against public policy" because it is a covenant not to compete. Opp'n at 23. As discussed supra, the Court rejects plaintiff's argument that the entire contract is unenforceable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

Information or Know-how to any business which is in competition with QSP." Id. ¶ 3(a). Plaintiff does not dispute that, upon leaving QSP, she maintained a copy of, and continued to use, the QSP Database to help a competitor of QSP secure clients. See Ball Decl., Exh. A, at 176:1–5 ("Q. Do you continue to use the database that contains information that you compiled while at QSP? A. Yes. Q. And where is the database currently located? A. On my computer in my home."); at 183:4–8 ("Q. And then you left QSP, and you took that information, and you used it to assist Valley of the Moon with going after the St. Dominic School as a customer; correct?" A. Yes."). Instead, plaintiff seems to argue that she did not misappropriate QSP's trade secret. Whether plaintiff breached the terms of the confidentiality agreement, however, is a separate inquiry.

Because plaintiff admits that she maintained a copy of and continued to use the QSP Database after her separation from QSP, and because the Court has found the confidentiality provisions enforceable, see supra, plaintiff is in breach of both the contract and the implied covenant of good faith and fair dealing as a matter of law. See Franconia Assocs. v. United States, 436 U.S. 129, 142–43 (2002) ("Failure by the promisor to perform at the time indicated for performance in the contract establishes an immediate breach."); Restatement (Second) of Contracts, § 235(2) (1979) ("When performance of a duty under a contract is due[,] any non-performance is a breach."); Ladd v. Warner Bros. Entm't, Inc., 184 Cal. App. 4th 1298, 1306 (Cal. Ct. App. 2010) ("[E]very contract in California contains an implied covenant of good faith and fair dealing that 'neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'") (quoting Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000)). Plaintiff's testimony that she was "never told to destroy the database" and that "[n]o one ever asked me if I kept a copy" is not relevant because the contract required plaintiff to return "all" records from QSP. By its plain terms, "all" records encompass any and all copies.

Accordingly, QSP's motion is GRANTED as to its first counterclaim.

## 2. Misappropriation of QSP's Trade Secret and Violation of UCL

The UTSA defines a trade secret as any "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) Derives independent economic value, actual or potential, from not being generally known tot he public or to other persons who can obtain economic value from its disclosure or use; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).

QSP asserts that the QSP Database is a trade secret under the UTSA definition. Mot. at 20.  Specifically, QSP contends that the QSP Database is a "valuable compilation of information regarding schools that were handpicked by QSP's FSMs, including, without limitation, the appropriate contact person at each school, each school's past fundraising efforts, QSP's efforts to obtain each school's business, and information regarding potential programs to sell to the school."  Id. at 21.  According to QSP, the process of collecting and inputting the information into the QSP Database was a "time consuming process that required extensive research over many years."  Id.  Further, QSP argues that it took reasonable steps to keep the QSP Database confidential by requiring its employees to sign a confidentiality agreement and requiring ex-employees to return all QSP-related documents and information upon their separation from the company.  Id. at 21–22.  QSP therefore maintains that plaintiff misappropriated the QSP Database by using it to help QSP's competitors.  Id.

In opposition, plaintiff asserts that the QSP Database is not a trade secret because it has no independent value and QSP did not take reasonable steps to maintain its secrecy. Opp'n at 19–20.  Plaintiff argues that the QSP Database lacks independent economic value because it simply lists readily accessible contact information for various schools, contains outdated information, and is largely comprised of "personal calendar reminders, not substantive business information."  Id.  Further, plaintiff contends that QSP did not take reasonable efforts to maintain its secrecy because plaintiff was never prevented from sharing the information in the database with sales representatives as well as others who were not subject to the confidentiality agreement.  Id. at 21.

The Court finds that whether the QSP Database is a protectable trade secret is a question of fact for the jury.  Customer lists, like the QSP Database, may qualify as a trade secret.  See, e.g., Reeves v. Hanlon, 33 Cal. 4th 1140, 1155 (2004) ("A violation of the UTSA occurs when an individual misappropriates a former employer's protected trade secret client list, for example, by using the list to solicit clients or to otherwise attain an unfair competitive advantage."); 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 420 F. Supp. 2d 1070 (N.D. Cal. 2006) ("It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, as long as the combination of all such information is not generally known.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

Moreover, QSP's steps of requiring each employee to sign a confidentiality agreement and demanding that plaintiff return all QSP-related documents and information upon her separation from the company may have been reasonable to maintain the QSP Database's secrecy.  See, e.g., Morlife, Inc. v. Perry, 56 Cal. App. 4th 1514, 1523 (Cal. Ct. App. 1997) (concluding that Morlife took reasonable steps to protect its trade secret by maintaining it on a computer with restricted access, requiring its employees to sign a confidentiality provision, and providing employees with its handbook containing a statement that employees shall not use or disclose Morlife's confidential information subsequent to their employment).

Whether QSP's Database is a trade secret, however, is inherently fact based and thus inappropriate to decide at the summary judgment stage.  See, e.g., San Jose Const., Inc. v. S.B.C.C., Inc., 155 Cal. App. 4th 1528, 1537 (Cal. Ct. App. 2007) ("Whether information is a trade secret is ordinarily a question of fact."); Thompson v. Impaxx, Inc., 113 Cal. App. 4th 1425, 1430 (Cal. Ct. App. 2003) ("The issue of whether information constitutes a trade secret is a question of fact."); In re Providian Credit Card Cases, 96 Cal. App. 4th 292, 306 (Cal. Ct. App. 2002) ("[W]hether a party claiming a trade secret undertook reasonable efforts to maintain secrecy is a question of fact and it may be implicit in a determination that the information does not qualify as a trade secret, also a question of fact.").

Accordingly, QSP's motion for summary judgment is DENIED as to its misappropriation of trade secret claim.  Because QSP's UCL claim is premised on plaintiff's alleged misappropriation of the QSP Database, the motion is DENIED as to that claim as well.

**V.    CONCLUSION**

In accordance with the foregoing, defendants' motion for judgment on the pleadings and motion to vacate Magistrate Walsh's November 8, 2011 order are GRANTED.

Plaintiff's motion for summary judgment is GRANTED insofar as paragraphs 1(a)–(e) and 3(b) of her employment agreement are unenforceable.  It is DENIED as to the remainder of the employment agreement, as to defendants' 180-day commission policy, and as to defendants' vacation policy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-1238 CAS (PJWx) | Date | June 4, 2012 |
|---|---|---|---|
| Title | JUDI FIELDS v. QSP, INC.; ET AL. | | |

Defendants' motion for summary judgment is GRANTED as to plaintiff's claim for unpaid overtime pursuant to Cal. Lab. Code §§ 510, 1194, and as to the breach of contract and breach of implied covenant of good faith and fair dealing counterclaim.  It is DENIED as to all remaining counterclaims.

The Scheduling Conference is continued to **October 1, 2012** at **11:00 A.M.**  An Updated Joint Report shall be filed on or before September 24, 2012, if necessary.

IT IS SO ORDERED.

|  | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |